We'll hear argument next this morning in Case 12-464, Kaley v. United States. Mr. Srebnick. Thank you, Mr. Chief Justice, and may it please the Court. When the government restrains private property, the owner of that property has the right to be heard at a meaningful time and in a meaningful manner. For a criminal defendant who's facing a criminal trial, whose property has been restrained, that time is now before the criminal trial, so that he or she can use those assets, that property, to retain and exercise counsel of choice. You know, I find it hard to think that the right of property is any more sacrosanct than the right to freedom of the person. And we allow a grand jury indictment without a separate mini-trial to justify the arrest and holding of the individual. And if he doesn't have bail, he's permanently in jail until the trial is over. And we allow all of that just on the basis of a grand jury indictment. And you're telling us it's okay for that. Maybe you think it's not okay for that. But I think you're saying it's okay for that, but it's not okay for distraining his property. I find it hard to think that it's okay for the one and not okay for the other. Justice Scalia, it's not okay for either. Ah, okay. This is a bigger case than I thought. The right to be released on bail, that is, the right not to be detained all the way until trial under this Court's precedent in United States v. Salerno, the Court provided procedural safeguards to ensure that before someone is held all the way until trial, they would have a hearing, a hearing which would include a right to challenge the weight of the evidence and other factors. We ask for something no different. Indeed, the indictment itself can justify the detention of the body and the detention of the asset until such time. Well, that's pre – I'm sorry. That's pretrial detention without bail. I thought Justice Scalia's question had to do with detaining someone who was indicted but couldn't make bail. Every person is limited by their own financial wherewithal, and so long as bail is set not as an excessive bail, he or she must rely on the assets that he or she owns. But why in that situation would the defendant not have the constitutional right to have a determination by a judge as to whether there was probable cause? In the context of a bail hearing, a judge does make that determination. Does it? There are several factors that are taken into account. One of them is weight of the evidence. Are you equating those two things, probable cause to believe that the defendant committed the offense and weight of the evidence as one of several factors to take account of in the bail determination? Yes, we are, Justice Ginsburg. In the United States v. Salerno, this Court upheld pretrial detention because there were procedural safeguards, a right to be heard shortly after the arrest. In the context of the restraint of assets as it stands now in the Eleventh Circuit, there is no right to be heard at any time until trial. I thought your answer might have been that, yes, in fact, the property is entitled to greater protection because it's going to be used to hire counsel that will keep the person out of jail long term, even if he can be put in jail pending the trial. Mr. Chief Justice, we've certainly made that argument in our brief. Some might find it more important to have those assets to retain counsel of choice than having their liberty deprived temporarily. In either case, the right to be heard should include the right to be heard by a judge, a judge who would have the authority to provide relief. Is this only in the case where the person has no other assets, where all of his assets are seized so that he can't hire counsel? Suppose only half of his assets are determined to or asserted by the government to have been the product of criminal activity, and he has a lot of other money with which he can hire an attorney. Is that a different case and we're not – that's not before us here? That's not this case. So long as the person has no other assets. So you have a hearing on whether he has other money, right? Such a hearing took place in this case, indeed. But nevertheless, the Petitioners, the Cayleys, did not have sufficient other funds to retain counsel of choice. If your – if your position prevails, there would be nothing to stop the defendant from using those assets for something other than paying an attorney. If the assets are unfrozen, freely available to the defendant, the defendant might say, I will settle for a legal aid lawyer, I want to use this money for something that I care more about. There would be no control on that, would there? Justice Ginsburg, I believe there could be and should be. Indeed, if the Court were to modify the restraining order to allow funds to be paid to counsel, the Court would supervise the release of those funds to ensure that, indeed, the funds were be using or being used for the exercise of the right to counsel of choice. We are not asking for a vacation of the restraining order so that the monies can be used for other purposes. Sotomayor, I see the government's strongest argument as being that the grand jury finding of probable cause is sacrosanct, and a hearing like the one that you are proposing would call the validity of that finding into question. Why don't you address that? Because we, you were talking about in bail the validity of the charges are not at issue. Just one factor in the Court's determination of whether to restrain him or her is the strength of the government's case. Are you trying to draw a similar analogy here? Justice Sotomayor, what we are proposing, and indeed it's been a hearing that's taken place in several of the circuits for some 25 years now. There's at least five who are ruling similarly to yours. So for 25 years, the courts in those circuits have been holding these hearings. And what these hearings look like are similar to a pretrial detention hearing. They are similar to suppression hearings. They are similar, indeed, to what Rule 5.1 preliminary hearings might look like. And all these hearings require is a presentation by both sides. Each side makes its presentation. Of course, the grand jury is a one-sided presentation. Of course, the grand jury does not give the defendant an opportunity to be heard. Indeed, the grand jury doesn't give the defendant an opportunity to have his adversary present exculpatory evidence to the grand jury based on this court. Well, that's terrible. We shouldn't allow that. So we shouldn't even hold the fellow. We've been doing it for 1,000 years, though, and it's hard to say that it violates what our concept of fundamental fairness is. Justice Scalia, we are not quarreling with the power of the grand jury to initiate the charge. We're simply saying the grand jury doesn't have the power to initiate and hold for the period between indictment and trial. But then there's the anomaly that the grand jury has said there's probable cause this defendant can be prosecuted. And then you would have the judge make a determination that there isn't probable cause to believe. So you're asking a judge who has determined there's no probable cause to preside at a trial because the grand jury has found that there is probable cause. I mean, how could a judge allow a trial to go on if the judge concludes there's no probable cause to arrest this defendant for this crime? How could the judge then conduct a trial? The judge would be overriding the grand jury's determination, right? Justice Ginsburg, I don't believe so. What's at issue at the hearing is what the government presents at that hearing as compared to what the defense presents at that hearing. No different, I submit, than in civil cases under Rule 65, where a judge holds an interim hearing on the entry or non-entry of an injunction, that doesn't define the outcome of the case. Kennedy, in your view, what weight does the court, the trial court, in this hearing have to give to the fact of the indictment? I believe the indictment authorizes the initiation of the restraint and not more. So no weight. We've now had a hearing. I ignore the indictment. And let's have a trial. That's your position. Justice Kennedy, if the defendant makes a presentation at the hearing? No, I would think the government has the burden to prove. If the defendant is entitled to the hearing because the defendant needs assets to retain counsel of choice and the government rests on the indictment and the defense presents nothing more, I submit the government would prevail at that hearing if nothing was presented. What about a detention hearing? Same rule? Under the statute. The government under a detention hearing, pardon me, the trial court under a detention hearing ignores the fact of the indictment. Under the Bail Reform Act, there is a rebuttable presumption in certain offenses where an indictment has been returned that the person is a flight risk. But it is a rebuttable presumption. We are asking for the same opportunity to rebut the entry of the restraint. So we in no way are submitting that the prosecution is prevented from proceeding to trial. But a grand jury indictment doesn't establish that there's probable cause to believe that the person is a flight risk. That doesn't contradict what the grand jury found. You're asking the judge here to contradict what the grand jury found. We're asking the judge to make an independent finding based on what's presented to that judge at the hearing. The very hearings that have been occurring for 25 years. Ginsburg. Would the next step be that the judge would then dismiss the indictment? The judge has found there's no probable cause to charge this man with this offense, and yet you're going to ask that same judge to try the case? It would seem to me that the logic of your position is if there is to be this hearing on probable cause, and the judge finds that there is no probable cause, then the judge dismisses the indictment. How could you ask a judge who thinks there's no probable cause to then conduct a trial? Justice Ginsburg, what the judge might conclude is at that hearing, at that moment in time, the government didn't satisfy its burden on that one day in time. It doesn't mean that the judge has gone back to look at what occurred before the grand jury. At these hearings, when they've been conducted, what do they look like? The rules of evidence would not apply, I assume. So the government could call, let's say, a case agent who would provide a summary of the — of some of the evidence, enough of the evidence that was submitted to the grand jury to establish probable cause in the opinion of the prosecution, and then what would happen? Justice Alito, the defendant — You could call witnesses. Could you subpoena witnesses? Could you require the disclosure of the names of government witnesses? Justice Alito, what we are proposing and what indeed happened in this case, in the case of the Cayleys, the defense presented transcripts of testimony. All we asked the judge to do is to consider it. Indeed, the judge had presided over a trial of a co-defendant who was acquitted. Well, this was an unusual — that's a somewhat unusual situation where you had been — there had already been a trial of someone else, excuse me, who was allegedly involved in the scheme. But what if that was not the case? In the more ordinary situation, what would happen? In the more ordinary situation, the defense, if it chose to offer evidence, it would be subject to the rules of the standard for issuing subpoenas under Nixon only if there were material exculpatory evidence that needed to be presented. This would not be a discovery exercise. This would not be an effort to simply learn identity of witnesses. Indeed, the government could and does rely upon hearsay witnesses, case agents to summarize the case. But where the defense, as here, offers the judge evidence of innocence, where the judge himself has presided over the trial of a co-defendant and sees the defect in the indictment, sees the defect in the theory of prosecution, we believe due process does not allow the judge to close the case. Scalia. And the next case we have, if we agree with you, will be somebody saying due process does not allow you to proceed with a trial when it has been found by an impartial judge that there is no probable cause. That will be our next case, right? And you may well argue it. And to tell you the truth, I would prefer, to save your client, I would prefer a rule that says you cannot, even with a grand jury indictment, prevent the defendant from using funds that are in his possession to hire counsel. Don't need a hearing. Just — just it's unconstitutional for the rule to be any broader than withholding money that the defendant does not need to defend himself. Would you like that? I really prefer it to yours. I think yours leads us into really strange territory. Justice Scalia, I believe that was the issue in Monsanto, Kaplan and Drysdale, where this Court held, 5-4 decision, that assets that are demonstrably tainted can be restrained over the objection of the defendant who needs those assets to retain counsel of choice. Today I'm asking the Court not to allow the restraint of those assets that are demonstrably not tainted. Can I ask what the prospects of success at a hearing like this are? You know, there's an amicus brief which lists 25 cases in the Second Circuit in which this kind of hearing was held, and my clerk went back and found that in 24 of those cases, the motion was denied, and in the 25th, the motion was granted but then reversed on appeal. So, and, you know, it's not surprising, really. I mean, probable cause, it's a pretty low bar. So what are we going through all this rigmarole for, for the prospect of, you know, coming out the same way in the end? Justice Kagan, would that brief? Just as a footnote, one in a million, which might be your case. I think that's the point. Actually, I believe that the brief of the New York Council of Defense Lawyers that Justice Kagan refers to points out that there are many other cases where at the courthouse steps the parties resolve the question of the restraint of those assets. Roberts. I would suppose if the government knows it's got to go through a hearing where it has to lay out part of its case, it may well decide at that point it's not worth it. So it's not 24 or 25. Who knows how many hundreds of times the government would have sought to seize the assets, but didn't because they knew they would have to justify it at a hearing. Mr. Chief Justice, that may be so, but it appears that the government does exactly that every day in Federal court during pretrial detention hearings when it proffers its case in order to convince a judge to detain a defendant, and we're asking for something no different. Ginsburg. But you said something about plainly tainted assets. I thought that a hearing was given on the traceability of the assets to the crime. So on that part, the defendant is allowed to challenge the connection between the assets and the offense, right? Yes, Justice Ginsburg. Everybody agrees with that? So there is a possibility to say, you said we have untainted assets, but the defendant in this case said, I concede that these assets are related to the charge defense. Yes, Justice Ginsburg. We distinguish between tainted and traceable to. The court below granted us a hearing to determine whether the assets restrained were traceable to the conduct in the indictment. What we would like to show at a hearing, indeed, I think we have shown it on the record before the district court, is that even though the assets that are under restraint are traceable to the conduct, the conduct is simply not criminal. And we'd like the court to hold a hearing which would not bind the court at trial, again, no different than courts hold in civil cases with Rule 65. This interim decision is not a determination of whether the grand jury got it right or wrong. It's a determination of whether the government presented a sufficient case on that day to satisfy its burden. Alito, there's been a suggestion that if the judge were to find that there was a lack of probable cause, the prosecutor would be under an ethical obligation to dismiss the charges. Do you agree with that? Justice Alito, not necessarily. It would depend on why there was no so-called probable cause. If it was based on a – something known to the prosecutor that would constrain him or her ethically, perhaps. But if it was simply because the prosecutor on the day of the hearing only presented one witness instead of all five, that would not constrain the prosecutor ethically in any way. The prosecutor retains the discretion to decide how strong a presentation to make at this hearing, no different than the prosecutor would have to make that same decision at a preliminary hearing, at a pretrial detention hearing, or plaintiffs have to make at a Rule 65 hearing. But what if it's the same evidence? The same evidence is introduced before the grand jury. Let's say it's a credibility determination. The grand jury finds the prosecution witness credible. The judge finds the prosecution witness not credible. Is there then an ethical obligation to dismiss the charges? Justice Alito, again, not necessarily. People can differ about credibility. We're not talking here about knowingly presenting perjured testimony or anything of that sort that might raise ethical constraints. Sotomayor, presumably, if, like here, if there's a legal dispute and the government thinks the judge is wrong, they would try the case and go up on appeal and say to the appellate court the judge below was wrong initially. I believe, yes, Justice Sotomayor. You would have lost the money in that case, but to the lawyers. Forgive me. Justice Sotomayor, I believe the government could have. I haven't studied whether they would have a right to an interlocutory appeal from that unfreezing of the assets. I suppose they would, just like we did. Scalia, does this hearing include an assessment of the reasonableness of attorney's fees? I mean, if you're only withholding the amount of money necessary for the defense, I mean, what if this fellow wants to hire Clarence Darrow? Does that give him all the money? How do you decide that issue? Justice Scalia, I think it's decided the same way courts every day decide the reasonableness of fees and the legitimacy of fees. So long as the money is being used for bona fide legal fees. Does he know his lawyers, his lawyer there, saying, you know, this is the lawyer I'm going to hire, and here's the fee I'm going to charge? In this case, yes, because counsel of choice had been retained two years before the indictment, had been working on the case for two years when the indictment was returned and the restraining order was entered. So counsel of choice had already estimated fees, disclosed them to the court, all a matter of record. There was never a dispute about the reasonableness of the fees, the bona fides of the fees, the legitimacy of the fees. But you acknowledge that that could be an issue in the hearing, in other cases? Yes, Justice Scalia. If the fees were a sham, if the fees were unreasonable, if they were not consistent with the locality, of course that could be. I don't know what the fees are. I don't even know who the lawyer is going to be. This defendant just comes in and says, I want to hire a lawyer. And the court says, you know, any particular lawyer? No, I just want a lawyer. The court's going to have to make up a fee, I assume, right? Justice Scalia, we're talking now about the right to counsel of choice. The lawyer would have been chosen by the defendant. The lawyer's fees would be disclosed to the court, and the court would then have information upon which to make a decision about whether the fees are reasonable and bona fides. He has to choose a lawyer before this hearing, right? If the defendant is seeking a particular amount to be unfrozen, at the time of the transfer of funds, of course the court would need to know who the lawyer was and how much the fee was. And so there's no problem with the court administering those issues. Indeed, the courts on a daily basis supervise the payment of appointed lawyers. And so all that the defense here is asking for is an opportunity to be heard in a meaningful manner, not simply about whether the asset restrained is traceable to the conduct. This Court's precedence has never limited due process to a tracing inquiry as suggested by the courts below. Ginsburg. Did you say that in this case, because counsel had been retained 2 years earlier, that the court was presented with how much the lawyer was going to charge to represent the defendants at trial? Yes. The dollar amount was known so that the court could then say, well, we'll unfreeze assets to that extent, but no more. Yes, Justice Ginsburg. So there's no mystery in this case who counsel is, what the estimate of fees are. That's not the issue in this case. The issue in this case is whether the Petitioners have an opportunity to be heard so as to challenge this restraining order that purports to remain in effect, indeed has remained in effect, for 6 years. What was the figure? Counsel was identified. Yes. What was the amount of money that the defendants wanted spared from the seizure order? The estimate was a fee of up to $500,000 for two lawyers and the entire investigation cost, consultants, experts, et cetera. That was the budget. There was no actual dollar figure set in stone. It was a budget in order to allow the defense to have their counsel of choice. And it was a case with very substantial documents, et cetera. Yes, Justice Kennedy. And there was never a question by the district court or indeed by the government as to the reasonableness of that budget if the case were to go all the way through trial. Tell me something, because I don't know the answer. Can the government track tainted funds that have been given to other people, including lawyers? Justice Scalia, I believe they can. I think they can, too. So what happens if this lawyer gets his $500,000 and you've had the traceability hearing, so these are tainted funds. If he's convicted, he gives the money back? Justice Scalia, in this case, if the hearing would go forward, the only way the lawyers would be paid is if there would be a finding by the court that the conduct at issue will not give rise to forfeiture. And so the lawyers would, of course, try to rely upon that judicial decision to establish the bona fides of their accepting that fee in the event that the defendants were convicted and the government sought forfeiture. The defense lawyers might be at risk. Mr. Chief Justice, I would like to reserve the balance of my time. Thank you. Thank you, counsel. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. For over 200 years, the rule in this Court and in all lower courts has been that the grand jury's determination of probable cause is conclusive for purposes of the criminal case, and that rule has been extended not only to bringing the defendant to trial, but also depriving the defendant of liberty, imposing occupational restrictions on the defendant, imposing firearms restrictions on the defendant. But none of that goes to his ability to hire his counsel of choice. I mean, that seems to me to make this case quite different. It's not that property is more valuable than liberty or anything like that. It's that the property can be used to hire a lawyer who can keep him out of jail for the next 30 years. So the parallels don't strike me as useful. Well, the parallels, I think, Mr. Chief Justice, illustrate that the process for determining probable cause by a grand jury has been deemed sufficiently reliable so that further judicial inquiry is not warranted. And that is borne out by two features of the grand jury, one, the way it operates, and the second, the empirical realities of what it has produced. The grand jury is set up as an independent body to protect the defendant from unfounded prosecutions. It is structurally independent from the prosecution and the courts. And it's composed of the courts. I understand the theory. In reality, it's not terribly – it's not great insulation from the overweening power of the government. Well, it is a protection in the following sense, Mr. Chief Justice. If the Court is seriously considering departing from the universal rule up till now in its cases and in other English-speaking courts, and allowing a review of whether there is probable cause after the grand jury has found it, it ought at least to have a good reason for doing so, namely, some reason to think that defendants will prevail  Breyer, I do that. Fine. Done. What we interpret the statute as saying under constitutional compulsion, it uses the word may, and if the magistrate concludes that there is some – after all, the basic principle of hearings is you don't need a hearing where there is nothing to have a hearing about. So unless the defendant demonstrates that there is a sound reason to believe that the grand jury was wrong, they only heard one side of the story, and that there is no probable cause, you don't have to give them a hearing. But the word is may. And so, like five circuits, Mr. Magistrate, if you think that there is a good chance – phrase that as you want – that they can show that the grand jury was wrong and they want the money to pay a lawyer – by the way, without a good lawyer, they're never going to make their case – and then, under those circumstances, the magistrate may. Now, that's a narrow exception. It preserves the lawyer. It's consistent with the words of the statute. It respects the grand jury, at least to the same extent that bail hearings and when you have in – you know, and probably I could think of a few others, but – or somebody. But the – it's not undercutting the grand jury. What's wrong with it? Justice Breyer, just to start with the last thing that you said, it is inconsistent with the way this Court has analyzed the Constitution. No, it leaves open – it leaves open the question in Monsanto explicitly. And the only change that I've made with that explicit leaving open the due process question in the footnote in Monsanto is instead of turning it on the Constitution, I turn it on the principle of constitutional avoidance. I wasn't referring to Monsanto, Justice Breyer. I was referring to the principle of constitutional avoidance. And I think it is consistent with the footnote. Dreeben. Justice Breyer, I wasn't referring to Monsanto Court's reservation of this issue. I agree with you. Monsanto did not decide whether there's a hearing. But in the bail context, this Court has determined that a grand jury indictment is sufficient to hold the defendant. There is no further judicial review of whether the defendant's liberty may be restrained. And so there are two different points. And that's true, but you're – is that how they interpret weight of the evidence of this? The Bail Reform Act says that the trial judge must determine weight of the evidence. And in practice, and perhaps in a reported decisions in the circuit, do the courts say we don't need to talk about weight of the evidence once there's a grand jury indictment? No, Justice Kennedy. But Salerno is different, because Salerno is a specific statute in which Congress enumerated the factors that the judge is going to consider. There's never a reconsideration of whether there's probable cause for the indictment. As my brother and I know. Kennedy, I'm asking, perhaps not too clearly, I'm asking what function, what weight, what relevance do courts give in day-to-day hearings on detention to the Bail Reform Act requirement that judges must determine as part of the bail determination the weight of the evidence? In a certain class of cases, Justice Kennedy, the indictment itself creates a presumption that no conditions will assure the safety of the community and the appearance of the defendant. So the indictment doesn't do that. But that's two different things. Is the only thing the judge considers the risk of flight? No. There's under Salerno. Then don't talk about risk of flight. What weight does the judge give in determining whether or not the charges have merit to the Bail Reform Act direction that he must determine the weight of the evidence? Justice Kennedy, when the government seeks to detain the defendant, the court has to make a determination under the Bail Reform Act, not because of the Constitution, but under the Bail Reform Act, that either the defendant poses a danger to the community or a risk of flight. In considering those issues, the court will consider a proffer from the government on the nature of the evidence of guilt. It's not a full-blown adversarial hearing in which new transcripts are being presented, new witnesses are being called. The government has a burden to injustify its entire case. But the court must determine that under the Bail Reform Act. The court will look at the weight of the evidence under the Bail Reform Act. It's not revisiting the question of probable cause. That's what's at issue in this case. No. Why do we have to decide it that way? I don't like casting into doubt the judgment of the grand jury, but why couldn't we say that when you're taking away funds that are needed for hiring a lawyer for your defense, you need something more than probable cause? Couldn't we make that up? That would be a due process requires something more than probable cause. That's squarely contrary to what this Court held in United States v. Monsanto. Monsanto considered, against the backdrop of Kaplan and Drysdale, which said forfeiture of funds that were desired to be used for attorneys' fees is constitutional. Then turn to the question of can those funds be restrained so they will be available for forfeiture at the end of the day. I don't see what this case, frankly, has to do with the grand jury at all or review of the grand jury determination. You don't have to put forward in this hearing what you put forward before the grand jury at all. You could put forth different stuff. You could put forth less of it. Maybe you don't want to show your whole hand. Maybe the party on the other side. They don't want to show their whole hand, too, so they don't want to show all this other evidence that's going to prove their innocence. It's an entirely separate proceeding. Now, maybe the fact of the grand jury indictment should be given some weight or not, but it's not reviewing a particular determination. It's the judge making a determination on what he or she has before him at that particular hearing. Dreeben. It's seeking to contradict the determination of probable cause. No. It's not in the sense that before the grand jury, you say, okay, here, we showed the grand jury these six things, and they said, yes, you look at those six things, there's probable cause. At this other hearing, you say, I've got to show you these two things, and the other side says these three things. And the judge at that point says, well, you don't have enough to restrain the property. It's not reviewing the other determination. It's an entirely separate proceeding. But it is seeking to contradict the other determination, because it's asking the judge to find that there is no probable cause when the grand jury has found that there is probable cause. And the grand jury's determination not only allows the government to bring the defendant to trial, which would be very odd if a court had found that there's really no probable cause for these charges. They are legally invalid. Sotomayor, do you have to go that – I mean, your adversary just said that there was a judicial finding of no probable cause. I don't know why that judicial finding has any legal effect other than to release the money at issue. The judge is basically saying, like he does in a bail hearing, this evidence is not the strongest I've seen in balancing the government's desire for restraint and the fundamental right to hire a lawyer of choice. It's not strong enough in this situation with what I've been presented to continue restraining the money. I don't see it as a legal determination of no probable cause. I see it as defining the word may in the statute. If a judge has discretion, that discretion has to be informed by something. Dreeben, I think United States v. Monsanto essentially rejected the argument that there's any discretion not to restrain the funds. Breyer, It didn't, actually. What it says is we reject the discretion in the context of Judge Winter having said that even where there is probable cause, we're going to balance a lot of factors. And what it says then at the – wait, I had it a second ago, but I'll find it again. It says at the top of the next page, it says that the may thing refers to that. I'll get it for you later. I understand that, Justice Breyer. There was an analysis of the statute. Breyer, there it is. It says, Thus, it's plainly aimed at implementing the commands of 1853a and cannot sensibly be construed to give the district court discretion to permit the dissipation of the very property that A53a requires to be forfeited upon conviction. Exactly. Okay? Exactly. That's what it says. So the claim here is this is property that A583a does not require the defendant to forfeit upon conviction, for there can be no conviction, because there is no evidence. And therefore, I don't find that that sentence in Monsanto destroys the use of the word which Congress put in, may. Yeah. I don't think that there's any serious question that Monsanto meant to preclude free-floating discretion. What it did was focus on the question of probable cause. And the Court squarely held that assets in the defendant's possession may be restrained in the way that they were here, based on a finding of probable cause to believe that the assets are forfeitable. Okay. We can't get into that. So far, this is very conceptual, which is absolutely fine. I just want to leave that claim for a moment. And if I leave the conceptual claim, what I find is that they have a pretty complicated case. They are saying that this defendant took some medical devices with permission from hospitals that were old and used, and he didn't return them to the manufacturer who didn't want them. And what he did is he figured out this way of selling them and making money. Now, they are saying that's not theft. And you are saying it is theft. And so to make the arguments is complicated. He can't do it without a good lawyer. He has some money here to hire a lawyer. And you say, oh, but it will undercut the grand jury. You say this has been the law in five circuits, and the government has not come to the end of its prosecutions. It hasn't injured prosecutions. So it's a purely practical matter. First Amendment, no real harm to the government that I can see. And so let's impose some kind of statutory limitation on use of this. But where there is a good claim for it, let it be used. Dreeben. Well, let me start with the fact that I think that there is harm and there is very little benefit. And I want to turn to both sides of that empirical equation. Before the Court concludes that for the first time a grand jury indictment can be contradicted by a judicial finding that there is no probable cause, albeit on different evidence, the Court should have a good reason to think that grand juries go awry in a sufficient number of cases so that this hearing, which will have costs, as I'll describe, is worth doing. There is no evidence to that effect. In the 20 years since Monsanto, Petitioners can point to not a single instance in which a court has concluded there is no probable cause, even though the grand jury found that there is probable cause. Sotomayor, what about the other case? Roberts, because they didn't have the good lawyers they wanted to hire. They do this, Mr. Chief Justice, usually with the lawyers who want to get the funds so they can be hired, and they try to get hearings. And as Justice Kagan pointed out, we have 25 reported cases. I would amend Justice Kagan's statement about those cases in only one respect. In 24 of them, the defendants lost outright. In the 25th one, they won and they were reversed on appeal. That is accurate. But the district court did not actually find that a grand jury had erred in finding probable cause, because that case involved a civil complaint, not a grand jury indictment. What we have is thousands of indictments, hundreds of thousands of indictments. Over the 10-year period that Respondents have canvassed in talking about Hyde Amendment fee awards, where courts have found no probable cause for a prosecution, he's pointed to four cases. There have been 660,000 indictments during that time period. The ratio between the cases in which the system didn't work and the grand jury malfunctioned and the cases where it did and where the defendant gets the opportunity for discovery, fishing expeditions. Roberts. Are you talking about cases in, like, the Second Circuit or the D.C. Circuit where you do have these hearings? I'm talking about two things, Mr. Chief Justice. First of all, in the D.C. Circuit, Second Circuit, Seventh Circuit, and elsewhere in the country where the law is not established, defendants can seek these hearings. In the 20 years that they have been available to be sought, not one has produced a finding of no probable cause. Roberts. I raised this point earlier. It may be because the government, particularly when it may have tenuous probable cause bases, decides it's not worth it to go through this hearing to seize and retain the assets. And it just seems that the statistics are phony in the sense that where the impact of this is going to be is not in reported cases. It's going to be when the U.S. attorney says it's not worth it, it would jeopardize the trial on the merits, and so they don't even go through the process of restraining the assets. Well, Mr. Chief Justice, I agree with you that those cases exist. Anecdotally, they exist where the government determines that the costs of exposing its witnesses, the dangers to witnesses, the potential undermining of the integrity of the trial makes it too high a price to go through this hearing. Or that the facts, since the funds are traceable anyway, and they'll have an opportunity to get them at the end, even if they don't get the restraining order, makes it not worth it. No, that doesn't always work, Mr. Chief Justice. Let's keep in mind that this statute operates in its core in drug trafficking cases, in serious organized criminal cases, where the exposure of the identities of the government's witnesses can lead to serious problems of obstruction of justice. This is the real cost of these kinds of hearings. Breyer. Has that happened in the circuits that have permitted this? The government is unlikely to jeopardize the safety of its witnesses by protesting the case. No, I'm saying in the circuit. You've now given us some statistics. So in how many cases in the circuits that have permitted what they want, or my version of it, in the circuits that have permitted some form of allowing the magistrate to look behind the grand jury indictment in appropriate cases and find that if it's there, there is no probable cause, so you can use this to hire a lawyer. There are a bunch of circuits that have had rules like that. In how many cases in those circuits has the government faced the serious risks that you're talking about? We do face them. I cannot quantify them. Can you give me a guess? You are so — I mean, you make a huge point of how this will put the government at the disadvantage. So someone in your office, probably you, asked people in the Justice Department, do you have any examples? Or how many cases have there been where these serious problems arose? And you probably got some kind of answer. So you probably have some kind of idea. You are correct. I did ask, and I received anecdotal responses. How many anecdotes? I received several specific anecdotes of instances in which the government elected not to proceed with a hearing because the government was too busy. The number of cases, several specific, that's more like 4 or is it more like 24? There are group numbers in which offices reported, we have encountered this a number of times. You're making it sound like you lose the whole case. This, to some extent, is a little bit of a sideshow. You want to send the Cayleys to jail, and you want the assets that you think are traceable to it, and it's all well and good. But it's not like the whole case falls apart, depending on whether or not you can restrain the assets or not. No. It's not just that, Mr. Chief Justice. These assets are generally used to pay restitution to victims of crime. And if the assets are paid out to attorneys, although in theory, as Justice Scalia explained, it is possible under the Relationback principle to go into the attorney's files and into their assets and recover them, in practice, it is not so easy to do. Because if you've touched on something that I think is very pertinent, they're used to pay restitution to the victims. I mean, the whole point here, and presumably it's something that your friends on the other side would raise in one of these hearings, is there are no victims, right? That's the theory. And maybe it will fall apart, and the judge will say, of course, they're victims. But as I understand it, the hospitals, you know, gave them to the people. The companies didn't want them back because they'd have to give a credit. You know, I'm sure the government has a different view of the facts. But that's a good example. Okay, this is going to be used to pay restitution to the victims. They come in and say, well, just give me 5 minutes, Your Honor, and you'll see there are no victims. What's wrong with that? What's wrong with it is that it basically compels the government to try the entire case in a preliminary hearing before the case has even resulted in restraints. Sotomayor, what happens in the five circuits? The frequency of these hearings is limited in part because it's rare that defendants are able to show that they have no other assets to retain. And that's the whole point, which is you talk about the compulsion on the government, but the compulsion on the defendant not to have a hearing because they're required to say something that could put them at greater risk, whether it's because of the obstruction of justice or merely from losing the advantage of their defense at trial. That's why these hearings are so rare. I think it's less about the government not wanting to disclose this case and more about the inducements against the defense wanting to preview its case. And also the stark unlikelihood that the defense will prevail unless the government is forced not to go through with the hearing because of concerns about witnessing. Breyer, I'm going to ask you a related question since it came up. I was curious as to how much of this forfeiture money gets to victims. So the best we could do is looking up 3 years, and it's on the basis of the figures that I got out of the DOJ on the online, about 25 to 20 to 25 percent goes to a category called third-party interest. Now, the third-party interest includes mortgages. It includes other creditors. It includes States who want taxes, et cetera. And if you subtract all those, a rough guess would be 5 or 10 percent goes to victims. Now, do you have a better estimate? I don't, Justice Breyer. I do know that one of the main purposes in seeking rest – seeking funds for forfeiture, particularly in white-collar cases like this, is to pay restitution. That is what – if you look at the actual amount in general, what the interests at issue here are, one, this money goes to pay for a lawyer so the person can prove that there's not even a claim against him, and it risks, of course, sometimes depriving the recipients of the forfeiture monies, and those would normally be, almost entirely, the DOJ for the expenses in going to the forfeiture expense of the trial. It would – various criminal justice organizations on the prosecution side, States and who want taxes, very little is being deprived to victims. Is that a fair comment or not? No, I think – I'm not sure that it is a fair comment. In this case, for example, the government does believe that the medical providers from which these medical supplies were obtained and then sold into the black market by agents of a company are victims of the crime. They received restitution in the prosecution of one of the co-conspirators in this case. And that is the way the government is planning to proceed. If the defense is able to come up, and based on case law that really has very little to do with any situation like this, has to do with the idea that public officials who receive bribes haven't deprived the State of its entitlement to that bribe money, that's the lead case that the defendants argue. Do you concede that there must be a traceability hearing? If the defendant seeks one, yes. And there was the opportunity in this case for a hearing, and the defendants are entitled to it. I mean in the general run of cases. So you agree there must – due process does require a traceability hearing? Yes. The defendants are entitled to show that the assets that are restrained are not actually the proceeds of the charged criminal offense, or another way involved in it. And the defendants have the burden of proof in that hearing? That would be up to this Court's decision. What is your view as to what the Constitution requires in that respect? I'd be happy to have the defendants bear the burden of proof, but I think the courts typically have placed the burden of proof on the government to show traceability. And the government, therefore, presents limited evidence, but it's all against the background of the crime not being called into question. Mr. Dreeben, if you would. All right. One other question, and it's a question I asked before. I still don't understand. Under the Bail Reform Act, the issue is pretrial detention. The defendant says, Your Honor, under the Bail Reform Act, you must determine the weight of the evidence, and this is a skimpy case. Can the judge say, the grand jury is all I need, it's probable cause? Can and do judges say that? Does that suffice to comply with the statute? Dreeben, I think typically, Justice Kennedy, the government makes a proffer of the evidence that it intends to use. The proffer is very limited, it's hearsay, it's a description of the crime, rather than a detailed evidentiary presentation of the kind that Petitioners want here. I do not think that typically resting on the indictment alone will satisfy the weight of the evidence factor, but the hearing that is provided for in Salerno is not a hearing that this Court has said you must do as a matter of due process. It is what Congress has established as a requirement in the Bail Reform Act. When it comes to due process. Kennedy, if it's required anyway, then certainly the due process argument that you make is much less weighty. If we have to go through this anyway for detention, why not do it for disfranchment property? It's not the same inquiry. The Bail Act hearings are usually very summary. They don't involve calling witnesses. They do not involve sworn testimony. Alito, that's what it seems to me this case is all about, all the talk about defendants being exonerated, that the judge is going to find a lack of probable cause. That's, you know, that's fantasy land for the most part. But what it's really about is about discovery. Prosecutors hate preliminary examinations. When do they ever occur in Federal felony cases? They're always, almost always eliminated by indictment. The defense bar hates grand jury proceedings. They would like to have a preliminary hearing where they get some discovery of the government's trial case. And that's what this is all about. So it seems to me that what's important is the nature. If there's going to be any kind of a hearing, what is going to take place at this hearing? And what typically happens beyond what I mentioned before, a case agent taking the stand and providing some summary of the evidence that was provided to the grand jury. How much further do they go? Is the defense entitled to any discovery? Do they subpoena witnesses? They can do both of those things. This is largely within the discretion of district courts. The Second Circuit, which probably has the most experience with these hearings under Monsanto, has held that hearsay evidence is sufficient to meet the government's burden of probable cause. What happens then are frequently excruciating fishing expedition cross-examinations of the government agent in the defense efforts to attempt to find out more about the government's case, to ask for additional documents, to make later claims that Brady evidence wasn't produced in connection with the Monsanto hearing and various sanctions should fall on the government. And the hearings do generally take the form of efforts by defense to obtain some strategic advantage. They have never resulted in the finding of no probable cause. And the Court's question, I think, here is really, is there anything on the defendant's side of the scale other than the abstract desire to use money that the government says is forfeitable to pay for attorneys? Ginsburg. On that point, Mr. Dreeben, would you clarify what happens at the end of the road if the defendant is convicted? I think you said in theory you could go after the lawyers to recoup the fee, but that would be difficult. Can you explain what is the difficulty? We know how much the fee was. Dreeben. The difficulty is that we have to actually trace the specific assets into the defendant's own accounts. And if the defendant's lawyer has spent that money and has used them, paid it out in salary, paid it out in expenses, it's gone. The government can't make that tracing argument. It can't forfeit substitute assets from the attorney. So it has to go under some State law theory that — and then sue the lawyers and argue that the funds were held in constructive trust for the government. State law varies widely on this. It's a big, messy, uncertain project. And as a result, it doesn't happen very often. Typically, if the funds are released to the attorneys, they will be gone. And if the defendant is, at the end of the day, convicted of a serious financial crime and the government wants those assets available to compensate investors, to compensate victims of food and drug violations, the funds are not there. They have been spent on an attorney. And under this Court's decision in Kaplan and Drysdale, those funds were never the defendant's funds at all. What happens is that they may have been released because the government chose at a hearing not to contest probable cause because it would suffer the kinds of ill effects that Justice Alito referred to, and that kind of — I won't blackmail, maybe, too strong a word, but it does put the government in a very difficult position. Breyer, if we could deal with that, couldn't we, by imposing conditions around surrounding the use of the word may with conditions that would reject the — you'd say they'd reject it if the magistrate thought this is just a fishing expedition for evidence. That's not a ground. He has to believe it's not a fishing expedition for evidence and that there is good cause to think that the defendant will succeed. Under those circumstances, which is pretty limited, under those circumstances, then he has discretionary authority to grant a hearing at which the defendant will be able to show, you know, that there is not probable cause to believe a crime was committed by his client. Those high bars would be helpful, but once the defendant clears them, the government faces the same pressures, and at the end of the day, the same consequence is going to occur, that if the judge does find in that one-in-a-million case which has not yet been encountered that there was no probable cause for the indictment, you will have the defendant proceeding on to trial in a judicial system that is honoring the finding of the grand jury after the judge has concluded to the contrary. And the other thing is that the defendant will be able to show, you know, that there is no probable cause for quashing a warrant, or it's about the subject of injunction. Now, grant you, the grand jury thing is there, but it's also there when you are talking about certain bail hearings. Dreeben, it's different in the bail context because the judge at the bail hearing is never questioning probable cause. He's only questioning whether the evidence is sufficient to justify restraining the defendant. Thank you.  Thank you, Mr. Dreeben. Mr. Shrevenick, you have 3 minutes remaining. The government is asking for an extraordinary remedy. We're asking for limited relief. Justice Alito, we're asking for the kind of hearing that Federal courts do every day. This is not a fishing expedition. This is not a discovery exercise. What do you mean? It's the kind of hearing that's held every day. I thought these were – in some circuits it is, but it's held occasionally. The hearing looks very similar to a pretrial detention hearing. And in 2008, in front of the D.C. Circuit, the government was asked the question that this Court asks today. What would be the prejudice to the government, or what has been the prejudice to the government in holding these hearings? And I quote from the D.C. Circuit, quote, the government could not identify any harm to its law enforcement efforts in the Second Circuit that has resulted from the Monsanto standard, 521 Fed 3rd at 419 footnote 1.  We have a record. All we ask is the judge to read the trial record that he presided over and come to a conclusion that will not bind the court at trial. It will not bind the government at trial. Roberts. Counsel, I think your quotation from the D.C. Circuit was not quite on point. My understanding is the Court was asking for empirical evidence that this has caused a particular problem, not whether they could point to any concerns. I think we've seen the concerns laid out today. I understand the hypothetical concerns that the prosecution raises. I understood the D.C. Circuit to say, is there any empirical evidence? In Matthews, the case that we cite and that we believe controls, this Court said, bare statistics rarely provide a satisfactory measure of fairness of a decision-making process. And so rather than rely on statistics, we rely on the Due Process Clause guarantee that you have an opportunity to be heard when the government wants to freeze the equity in my client's home and say to her and say to her husband, they can't use the equity in their home to retain counsel of choice when they've shown the court that they can prevail. The government says the judge must close his eyes. The judge can't consider the trial that he presided over. Instead, he must be constrained by a one-sided proceeding that the judge never observed, the grand jury. We say the grand jury is enough to make my client go to trial. We'll be there if we have to be there. But we say she and he should have the right to use their assets to retain their counsel of choice. After all, this Court has held that the right to counsel of choice is a structural right. It is per se reversible to deny someone their counsel of choice. I ask that this Court not rule that the government can beggar a defendant into submission. I ask this Court not to rule that the government can impoverish someone without giving them a chance to be heard through their counsel of choice. If there are no further questions, I would submit the case. Roberts. Thank you, counsel. The case is submitted.